IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TARON PARKINSON, MICHAEL SUBER, KEITH GARLIN, DAVON ARMSTRONG, AUDREY BROWN, VAUGHN PAYNE, DENNIS SMITH, RAMONA JACQUEZ, and BARRY SEASE-BEY, <br> Plaintiffs, <br><br> v. <br><br> NEW YORK CITY POLICE OFFICER KEVIN DESORMEAU, OFFICER SASHA CORDOBA, CITY OF NEW YORK, and other as-yet-unidentified officers of the New York Police Department, <br><br> Defendants. | Case No. <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs TARON PARKINSON, MICHAEL SUBER, KEITH GARLIN, DAVON ARMSTRONG, AUDREY BROWN, VAUGHN PAYNE, DENNIS SMITH, RAMONA JACQUEZ, and BARRY SEASE-BEY, by their attorneys, Loevy & Loevy, complain of Defendants New York City Police Officers Kevin Desormeau and Sasha Cordoba and Unknown Officers (collectively, "Defendant Officers") and City of New York; as follows:

### INTRODUCTION

1. For over a decade, New York City Police Department ("NYPD") employed Defendants Kevin Desormeau and Sasha Cordoba, who used their power to engage in massive corruption, and destroy the lives of innocent people.

2. During their years on the force, Defendants Desormeau and Cordoba conspired among themselves and with the other Defendant Officers to violate the rights of innocent people and frame them for crimes they did not commit by fabricating and concealing evidence.

3. In particular, Defendants Desormeau and Cordoba have framed over fifty other innocent people in the last decade as a result of the policies and practices of the New York Police Department described below.

4. The innocent people arrested by Defendant Officers tried to ring the alarm bells to alert the NYPD of the Defendant Officers' misconduct, but their voices were silenced, and their stories of injustice ignored.

5. Finally, in 2018, Defendants Desormeau and Cordoba were indicted in two different jurisdictions, Queens and Manhattan, for fabricating evidence, framing innocent people, and committing perjury. Both Defendants were suspended from the NYPD.

6. Because Defendants Desormeau and Cordoba knew their lies had caught up to them, Defendants pled guilty to both sets of charges.

7. Defendant Desormeau was sentenced to three years of probation and fined in connection with each case.

8. Defendant Cordoba was sentenced to 60 days in prison.

9. In November 2021, Queens District Attorney Melinda Katz sought to repair the widespread harm Defendant Officers had wrought and requested that fifty-four cases in which Defendants Desormeau and/or Cordoba were the essential witness(es) be vacated because the "serious misconduct" of Defendants Desormeau and Cordoba compromised the cases.

10. District Attorney Katz said, "We cannot stand behind a criminal conviction where the essential law enforcement witness has been convicted of crimes which irreparably impair their credibility. Vacating and dismissing these cases is both constitutionally required and necessary to ensure public confidence in our justice system."

11. Plaintiffs bring this action to obtain justice and redress the devastating injuries that Defendants have caused them.

## JURISDICTION AND VENUE

12. This action is brought pursuant to 42 U.S.C. § 1983 to redress Defendants' deprivation of Plaintiffs' rights secured by the U.S. Constitution.

13. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367.

14. Venue is proper under 28 U.S.C. § 1391(b). The majority of Plaintiffs reside in this judicial district, the majority of the Defendants reside in this judicial district, and the events and omissions giving rise to Plaintiffs' claims occurred within this judicial district.

## PARTIES

15. Plaintiffs Audrey Brown, Ramona Jacquez, Keith Garlin, Taron Parkinson, and Dennis Smith are residents of Queens County.

16. Plaintiffs Vaughn Payne, Michael Suber, and Barry Sease-Bey reside in Kings County.

17. Plaintiff Davon Armstrong is a resident of Newton County, Georgia, but at the time of events giving rise to this lawsuit, Plaintiff Armstrong was a resident of Queens County.

18. At all times relevant hereto, Defendants Desormeau and Cordoba and other unknown law enforcement officers (collectively, the "Defendant Officers") were police officers in the New York Police Department ("NYPD") acting under color of law and within the scope of their employment for the City of New York. They are entitled to indemnification under N.Y. Gen. Mun. Law § 50-k and by contract. The supervisory defendants facilitated, condoned, and approved the constitutional violations committed by their subordinates.

3

19. Defendant City of New York is a New York State municipal corporation and is and/or was the employer of each of the Defendant Officers. The City of New York is liable for the acts of the Defendant Officers, which were undertaken within the scope of their employment for the City.

**Desormeau and Cordoba's Pattern of Misconduct**

20. Defendants Desormeau and Cordoba have a history of engaging in precisely the kind of police misconduct that occurred in Plaintiffs' cases, including fabricating and concealing evidence in the course of maliciously prosecuting innocent persons.

21. In addition to the cases in which Plaintiffs have been exonerated, there are dozens of other identified cases in which Desormeau and Cordoba engaged in serious investigative misconduct.

22. For example, in 2014, Roosevelt McCoy was strip-searched and arrested by Defendants Desormeau and Cordoba, for drug possession and was held on Riker's Island for over fifty days until all criminal charges were dismissed. In McCoy's civil suit against the City, McCoy alleged that Desormeau and Cordoba fabricated a variety of evidence in their efforts to initiate criminal proceedings against him, including an arrest report and property vouchers. The City filed crossclaims against Desormeau and Cordoba seeking indemnification for their actions. In November 2016, the City of New York provided McCoy with an Offer of Judgment for $500,000, and McCoy settled the remaining claims against the officers in August 2017.

23. In 2015, Defendant Desormeau arrested Arthur West for felony charges in connection with a firearm allegedly found in a locked box in his uncle's bedroom. West was held on Riker's Island until all charges were dismissed. In West's civil suit, West alleged that Desormeau and other NYPD officers engaged in a conspiracy to violate West's rights by

arresting and detaining him without probable cause. In 2016, West settled his case against Desormeau certain NYPD officers, and the City.

24. In 2013, Anthony Lopez was arrested by Defendants Cordoba, Desormeau, and other NYPD officers for criminal possession of a firearm. In Lopez's civil suit against the officers and the City, Lopez alleged that the officers, including Desormeau and Cordoba, planted false evidence and provided perjured testimony to obtain a search warrant of his home. The case was settled in 2018.

25. In 2014, Trevor Lucas was arrested by Defendant Desormeau and other officers for conspiracy to commit murder. Lucas was ultimately convicted of this crime and was incarcerated for over fifty months until the Appellate Division of the Second Department unanimously overturned the conviction. Lucas alleged in his civil suit that the charges and conviction were the result of the officer defendants, including Desormeau, fabricated charging documents containing false statements. The parties settled in October 2020.

26. In 2013, Ronald Fourcand was arrested by Defendant Cordoba and other NYPD officers after they entered his home without a warrant. In Fourcand's civil suit, Fourcand alleged that Cordoba lacked probable cause to arrest him. The case was settled in October 2016.

27. Given this history of misconduct and the City of New York's failure to meaningfully discipline Desormeau, Cordoba, and others, it is apparent that Desormeau and Cordoba engaged in such misconduct because they had every reason to believe that the City of New York and its police department condoned their behavior.

28. As of the filing of this complaint, fifty-four individuals have had their convictions thrown out as a result of Defendants' misconduct. Investigation continues, and more exonerations are expected in the coming months.

29. Defendant Desormeau was charged criminally in connection with the foregoing misconduct, and has pled guilty to charges in Manhattan and Queens. He was sentenced to three years' probation and fined in connection with the Manhattan case and to three years of probation and fined for perjury in connection with the Queens case.

30. Defendant Cordoba also pled guilty to the 2014 charges in Manhattan and Queens. She was sentenced to 60 days' imprisonment for the Manhattan case.

## New York City's Responsibility

31. As set forth above, the City of New York failed to meaningfully discipline its police officers, including Defendants Desormeau and Cordoba and the other Defendants, for their misconduct. Defendants engaged in the misconduct set forth in this Complaint because they knew that the City of New York and its Police Department tolerated and condoned it.

32. The New York Police Department is responsible, by virtue of its official policies, for scores of miscarriages of justice like that inflicted upon Plaintiffs.

33. Specifically, hundreds of other cases have come to light in which New York police officers fabricated false evidence and/or suppressed exculpatory evidence in order to cause the arrests and subsequent convictions of innocent persons for serious crimes that they did not commit. This number does not even take into account the scores of false arrests that did not result in conviction.

34. For example, in October 1997, Chad Breland was wrongfully convicted of the burglary and robbery of Freddie Balston in Queens, New York. Breland was initially connected to the robbery primarily due to the false statement of a confidential informant. The confidential informant falsely told his handler, a NYPD detective, that Breland was involved in the Balston burglary and robbery. Breland was charged, prosecuted, and wrongfully convicted of the crimes.

After being wrongfully convicted, Breland continued fighting to prove his innocence, including petitioning the Conviction Integrity Unit ("CIU") of the Queens County District Attorney's Office to reinvestigate his case. Breland and CIU's post-conviction investigation revealed that NYPD officers had suppressed from the prosecutor and the defense an exculpatory report that showed fingerprints were found at the Balston crime scene – prints that were later revealed to belong to the confidential informant who falsely stated Breland was involved in the crime. It was also revealed that the NYPD handler for the confidential informant suppressed evidence from the prosecutor and defense that he repeatedly intervened in criminal cases on the confidential informant's behalf. In 2021, Queens County Supreme Court vacated Breland's conviction and dismissed the indictment.

35. In 2006, Shuaib O'Neill was arrested in Queens, New York, and falsely charged with criminal possession of a weapon in the second degree and criminal possession of marijuana in the fifth degree. In 2010, O'Neill was wrongfully convicted of both charges. After his wrongful conviction, O'Neill filed an appeal. The appellate court reviewed the case and found that the evidence, or lack thereof, "cast doubt on the arresting officers' credibility." In 2016, O'Neill's conviction was vacated and the indictment against him dismissed.

36. In 2007, Darious Peterson was arrested in Queens, New York after his car was struck by a vehicle driven by NYPD police officers. In Peterson's civil suit he alleged that during the arrest NYPD officers physically abused Peterson, causing him to break his ribs, lose consciousness, and become hospitalized. In response, NYPD officers falsely charged Peterson with 12 different crimes, but the grand jury heard Peterson's testimony and refused to indict him on any of the 12 charges. In 2008, Peterson sued New York City and certain NYPD officers for

his injuries, and for falsely charging and prosecuting him. In 2009, Peterson settled his case against the civil defendants.

37. In 2007, Kaleek Cross was walking down the street and was wrongfully arrested in Queens, New York. In Cross's civil suit he alleged that pursuant to his arrest, NYPD officers falsely charged Cross with multiple criminal possession of weapons charges. The officers created and provided false reports to support the false charges. Cross was prosecuted for these crimes and in 2008 was acquitted of all charges. In 2008, Cross sued New York City and certain NYPD officers for their unconstitutional conduct, and in 2009 the case was settled against the civil defendants.

38. In 2011, Dejuan Battle was wrongfully convicted of criminal possession of a weapon in the second degree, based on an arrest that took place in Queens, New York. Battle asserted he was innocent and appealed his case. The appellate court's review found that "objective facts . . . cast doubt upon the officers' credibility." Based on this finding, in 2014, Battle's conviction was vacated and the indictment against him was dismissed.

39. In 2012, Lyla Smith went to the 113th Precinct to learn about a raid that had been conducted at her boyfriend's residence located in Queens, New York. In Smith's civil suit she alleged that while there, NYPD officers interrogated Smith, threatened her, humiliated her, and then arrested Smith by falsely claiming Smith possessed a controlled substance, drug paraphernalia, and ammunition. The prosecutor, however, dismissed the charges against Smith. In 2012, Smith sued New York City and certain NYPD officers, and in 2013, the case was settled against the civil defendants.

40. At all relevant times, members of the New York Police Department, including the Defendant Officers in this action, routinely manufactured evidence against innocent persons

through unconstitutional means, including coercing, manipulating, threatening, pressuring, and offering inducements to suspects and witnesses to obtain false statements implicating innocent persons, knowing full well that those statements were false.

41. Consistent with the municipal policy and practice described in the preceding paragraph, employees of the City of New York, including the named Defendant Officers, fabricated reports, witness identifications, and other evidence, which was used to wrongfully prosecute Plaintiff.

42. The City of New York and final policymaking officials within the New York Police Department failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiffs' ongoing injuries.

43. Prior to and during 2014 to 2016, the years in which Plaintiffs were falsely arrested and charged, the City of New York operated a dysfunctional disciplinary system for New York police officers accused of serious misconduct. The New York police disciplinary apparatus almost never imposed significant discipline against police officers accused of violating the civil and constitutional rights of members of the public. The New York police disciplinary apparatus included no mechanism for identifying police officers who were repeatedly accused of engaging in the same type of misconduct.

44. As a result of the City of New York's established practice of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, and failing to discipline officers accused of serious misconduct within the New York Police

Department, officers (including the Defendant Officers here) have come to believe that they may violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences.

45. As a result of these policies and practices of the City of New York, members of the New York Police Department act with impunity when they violate the constitutional and civil rights of citizens. This includes the Defendant Officers in this case.

46. The City's aforementioned policies and practices caused the Plaintiffs' injuries in this case. Defendant Officers, including Defendants Desormeau and Cordoba, have a history of engaging in the kind of misconduct that occurred in this case, including the fabrication and concealment of evidence, and the Defendant Officers engaged in such misconduct because they had no reason to fear that the City of New York and its Police Department would ever discipline them for doing so.

47. In 2018, Defendants Desormeau and Cordoba were arrested and charged with fabricating the facts of a gun possession arrest in Manhattan in 2014 and lying about a drug bust in Queens in 2014 that never happened. The Manhattan indictment charged them with offering a false instrument and official misconduct. The Queens indictment charged them with perjury, official misconduct, and making a punishable false written statement.

48. The policies and practices described in the foregoing paragraphs were also approved by the City of New York policymakers, who were deliberately indifferent to the violations of constitutional rights described herein.

## The Plaintiffs

49. Plaintiffs in this action were all victims of Defendants' pattern of misconduct.

50. Between 2014 and 2016, each of the Plaintiffs had their constitutional rights violated by the Defendant Officers, pursuant to and consistent with their pattern of misconduct, described above.

51. Each Plaintiff was falsely charged with a crime they did not commit, and for each of them the Defendant Officers committed perjury in pursuit of false charges, and otherwise conspired to frame them.

52. Each of the criminal charges against each of the Plaintiffs was based upon false evidence that Defendant Officers fabricated, and Defendants suppressed evidence of their misconduct from the prosecutor and the defense.

53. But for the Defendant Officers' misconduct, none of the Plaintiffs would have ever been arrested or prosecuted.

54. Due to Defendant Officers' misconduct, each of the Plaintiffs faced years in prison.

55. Collectively, Plaintiffs suffered 90 months of wrongful imprisonment and years of conditional and/or supervised release due to the misconduct described in this Complaint.

56. Years after Plaintiffs were arrested and served their wrongful sentences, on November 8, 2021, the Queens District Attorney moved to vacate their convictions and dismiss the charges against them, along with forty-six other cases involving Defendants Cordoba and Desormeau. The court granted the request.

57. The vacated convictions, however, are inadequate to repair the damage Plaintiffs have suffered as a result of the Defendants' misconduct. Plaintiffs' injuries have been devastating.

58. During their sentences for their wrongful convictions, Plaintiffs were isolated from their families; deprived of the ability to interact freely with their loved ones; to be present for holidays, births, and other life events; and to pursue their passions and interests.

59. For example, at the time Plaintiff Parkinson was wrongfully convicted he had a newborn son. As a result of his wrongful incarceration, Plaintiff Parkinson missed the first few formative years of his first-born child's life.

60. When Plaintiff Sease-Bey was wrongfully arrested, his girlfriend at the time, Monica Bell, was wrongfully arrested and also falsely charged based on the items seized during the execution of the search warrant. Ms. Bell was pregnant with Mr. Sease-Bey's children, and while she was detained on the false charges, she miscarried.

61. While Plaintiff Armstrong was detained pre-trial on false charges, Plaintiff Armstrong was attacked and suffered a dislocated shoulder. He could not seek medical attention until he was released, so spent days in severe and debilitating pain.

62. As a result of Plaintiff Brown's wrongful conviction, Plaintiff Brown lost her job and was subsequently deemed an unfit mother and forced to surrender custody of one of her children.

63. Similarly, because of Plaintiff Smith's wrongful conviction, he lost custody of his son and sustained physical injuries during the course of his false arrest.

64. Plaintiff Payne also suffered due to Defendants' misconduct. After Plaintiff Payne's wrongful conviction, Plaintiff Payne lost his livelihood and was evicted from his home due to his inability to pay rent.

65. Due to the Defendant Officers' misconduct, Plaintiff Jacquez was forced to suffer the humiliation of being singled out without cause and being wrongfully arrested at her own home.

66. Prior to Plaintiff Suber and Plaintiff Garlin's wrongful incarcerations, Plaintiff Suber and Plaintiff Garlin had steady jobs. Since Plaintiffs' release, they have experienced significant difficulty obtaining gainful and steady employment.

67. As a result of their wrongful convictions, Plaintiffs were deprived of opportunities to engage in meaningful labor, develop a career, and to live freely as autonomous beings.

68. In addition to causing the trauma of Plaintiffs' wrongful imprisonment and loss of liberty, Defendants' misconduct caused and continues to cause Plaintiffs' extreme emotional and psychological pain and suffering.

69. The misconduct committed by Defendants was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiffs' clear innocence, and each Defendant is liable for punitive damages, as well as other relief as described below.

**COUNT I**
**42 U.S.C. § 1983 - Due Process**
**(Fourteenth Amendment)**

70. Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

71. In the manner described more fully above, Defendants, while acting as investigators, individually, jointly, and in conspiracy with each other, deprived Plaintiffs of their constitutional right to due process.

72. In the manner described more fully above, Defendants deliberately withheld exculpatory evidence from Plaintiffs and from state prosecutors, among others, as well as

13

knowingly fabricated false evidence, thereby misleading and misdirecting the criminal prosecutions of Plaintiffs.

73. Defendants' misconduct directly resulted in the detention of Plaintiffs and in the start of and continuation of unjust criminal proceedings against Plaintiffs, denying them of their constitutional right to due process under the Fourteenth Amendment. Absent Defendants' misconduct, the prosecution of Plaintiffs could not and would not have been pursued.

74. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiffs' innocence.

75. The misconduct described in this Count by these Defendants was undertaken pursuant to the policy and practice of the New York Police Department, in the manner more fully described below in Count VI.

## COUNT II
### 42 U.S.C. § 1983 - Malicious Prosecution

76. Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

77. In the manner described more fully above, the individual Defendants, individually, jointly, and in conspiracy with one another, and others, as well as under color of law and within the scope of their employment, used false evidence that they had manufactured in order to accuse Plaintiffs of criminal activity and detain, initiate, continue, and perpetuate judicial proceedings, without probable cause.

78. In so doing, these Defendants caused Plaintiffs to be deprived of their liberty and detained and subjected improperly to judicial proceedings without probable cause, in violation of their rights secured by the Fourth and Fourteenth Amendments. These judicial proceedings were instituted and continued maliciously, resulting in injury.

79. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiffs' clear innocence.

80. As a result of the Defendants' misconduct described in this Count, Plaintiffs suffered loss of liberty, great emotional pain and suffering, and other grievous and continuing injuries and damages.

81. The misconduct described in this Count by these Defendants was undertaken pursuant to the policy and practice of the New York Police Department, in the manner more fully described below in Count VI.

## COUNT III
### 42 U.S.C. § 1983 - Conspiracy to Deprive Constitutional Rights

82. Plaintiffs incorporate each paragraph of this complaint as if fully restated here.

83. Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiffs for crimes they did not commit and deprive them of their constitutional rights by maliciously causing Plaintiffs' prosecutions, by fabricating evidence that would be used to convict Plaintiffs; and by withholding exculpatory information from Plaintiffs' defense attorneys and the prosecution, as described above.

84. In so doing, these co-conspirators conspired to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiffs of these rights.

85. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

86. The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiffs' clear innocence.

87. As a result of Defendants' misconduct described in this count, Plaintiffs suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

88. The misconduct described in this Count by Defendant Officers was undertaken pursuant to the policy and practice of the New York Police Department, in the manner more fully described below in Count VI.

## COUNT IV
## 42 U.S.C. § 1983 - Failure to Intervene

89. Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

90. During the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiffs' constitutional rights, even though they had the opportunity to do so.

91. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiffs' innocence.

92. As a result of the Defendants' failure to intervene to prevent the violation of Plaintiffs' constitutional rights, Plaintiffs suffered loss of liberty, great emotional pain and suffering, and other grievous and continuing injuries and damages.

93. The misconduct described in this Count by Defendant Officers was undertaken pursuant to the policy and practice of the New York Police Department, in the manner more fully described below in Count VI.

## COUNT V
### 42 U.S.C. § 1983 - Municipal Liability

94. Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

95. As described more fully herein, the City of New York is itself liable for the violation of Plaintiffs' constitutional rights. Plaintiffs' injuries were caused by the policies, practices, and customs of the New York Police Department, in that employees and agents of the New York Police Department, including Defendants in particular, fabricated false evidence implicating criminal defendants in criminal conduct, pursued wrongful convictions through profoundly flawed investigations, and otherwise violated due process in a similar manner to that alleged herein.

96. This institutional desire to close cases through abusive tactics regardless of actual guilt or innocence in order to enhance police officers' personal standing in the Department was known to the command personnel, who themselves participated in the practice.

97. The above-described widespread practices, which were so well-settled as to constitute the *de facto* policy of the New York Police Department, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it. Furthermore, the above-described widespread practices were allowed to flourish because the New York Police Department declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents who withheld material evidence, fabricated false evidence and witness testimony, and pursued wrongful convictions.

98. The constitutional violations described in this Complaint were also undertaken pursuant to the policy and practices of the New York Police Department in that the constitutional

violations were committed with the knowledge or approval of persons with final policymaking authority for City of New York and the New York Police Department.

99. New York police officers who manufactured bogus criminal cases against individuals such as Plaintiffs had every reason to know that they not only enjoyed *de facto* immunity from criminal prosecution and/or Departmental discipline, but that they also stood to be rewarded for closing cases no matter the costs. In this way, this system proximately caused abuses, such as the misconduct at issue in this case.

100. The policies, practices, and customs set forth above were the moving force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiffs to suffer the grievous and permanent injuries and damages set forth above.[1]

WHEREFORE, Plaintiffs TARON PARKINSON, MICHAEL SUBER, KEITH GARLIN, DAVON ARMSTRONG, AUDREY BROWN, VAUGHN PAYNE, DENNIS SMITH, RAMONA JACQUEZ, and BARRY SEASE-BEY respectfully request that this Court enter judgment in their favor and against New York City Police Officers Kevin Desormeau and Sasha Cordoba, Unknown Officers, and Defendant City of New York awarding compensatory damages, punitive damages, costs, attorneys' fees, and interest, as well as any other relief this Court deems just and appropriate.

---

[1] On February 1, 2022, Plaintiffs filed their notices of claim with the New York Court of Claims. Plaintiffs will amend their complaint to include state-law claims if these claims are denied.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

                                              RESPECTFULLY SUBMITTED:

                                              s/ Danielle Hamilton
                                              Attorney for Plaintiffs

Jon Loevy*
Danielle Hamilton
Renee Spence*
Joshua Tepfer*
LOEVY & LOEVY
311 North Aberdeen St., 3rd floor
New York, IL 60607
Phone: (312) 243-5900
Fax: (312) 243-5902

*Admission by *pro hac vice* pending