# LOEVY + LOEVY

September 5, 2024

311 N. Aberdeen Street
Chicago, Illinois 60607
(312) 243-5900
www.loevy.com

**Via ECF**
Hon. Lois Bloom
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**RE:** *Parkinson et al. v. Desormeau et al.*, Case No. 22-cv-00851-LDH-LB – **Plaintiffs' Motion to Compel** *Monell* **Discovery**

Dear Judge Bloom,

Plaintiffs Taron Parkinson, Michael Suber, Keith Garlin, Davon Armstrong, Audrey Brown, Vaughn Payne, Dennis Smith, Ramona Jacquez, and Barry Sease-Bey ("Plaintiffs"), by and through their attorneys at Loevy & Loevy, respectfully request that this Court enter an order compelling Defendant City of New York ("City") to disclose certain outstanding *Monell* discovery under Federal Rule of Civil Procedure 37. In support of this motion, Plaintiffs state as follows:

## INTRODUCTION

The plaintiffs in this lawsuit filed their claims together in a single complaint because something similar happened to each of them: they each encountered Defendants Sasha Cordoba and/or Kevin Desormeau in the City of New York, and Cordoba and/or Desormeau framed each of them for a crime they did not commit. *See* ECF No. 33-1 at ¶ 115. These cases are part of a pattern of misconduct by these Defendants where, enabled by their employer, Defendants routinely violated the rights of people they encountered while working as New York City police officers. For multiple Plaintiffs (Taron Parkinson, Audrey Brown, Vaughn Payne, and Davon Armstrong), Cordoba and/or Desormeau conducted an unlawful search and falsely claimed to find a weapon and/or drugs. *Id.* at ¶¶ 31-38, 43-60, 85-94. For other Plaintiffs (Ramona Jacquez and Michael Suber), Defendants claimed to witness a crime that never actually happened. *Id.* at ¶¶ 39-42, 61-65. And in the cases of Dennis Smith, Barry Sease-Bey, and Keith Garlin, Defendants used false and fabricated information from a purported confidential informant to obtain a search warrant and then lied about what they found and how they found it. *Id.* at ¶¶ 66-84.

Plaintiffs' encounters with these Defendants took place between May 2013 and March 2015, but as Plaintiffs have alleged, they were not Defendants' only victims. Plaintiffs' complaint points to multiple other cases arising from the same period where these Defendants similarly harmed other New Yorkers. *Id.* at ¶¶ 20-30. And Defendants' widespread pattern of misconduct is not simply the work of two rogue officers. Rather, the City invited and condoned

Defendants' massive corruption by allowing a widespread pattern of misconduct like Desormeau's and Cordoba's to go unchecked, and by failing to implement sufficient training or oversight to identify, investigate, and meaningfully discipline officers for the same misconduct. *See* ECF No. 33-1 at ¶¶ 95, 104-12. As a result, the City is responsible for Defendants' misconduct under a municipal liability theory. *Id.* at ¶¶ 160-66. Plaintiffs' *Monell* claims are an important part of this litigation because, without them, the City of New York has license —as it already has in this case—to disavow responsibility for Defendants' misconduct, dismissing it as an aberration.

For the last year, Plaintiffs have attempted to engage in *Monell*-related discovery with the City, seeking the kinds of information routinely produced in lawsuits with claims for municipal liability. They have requested: general information about misconduct complaints against Defendants from a narrow time period; detailed information about specific complaints against Defendants; the identities of the City's policymakers; and information about what the City's supervisors and policymakers knew about Desormeau's and Cordoba's misconduct. Plaintiffs have also asked the City to identify a representative to testify about its relevant policies.

Though the requests are already proportional to the needs of this case, over the course of the last year, Plaintiffs have made extensive efforts to further adjust, narrow, and target their *Monell*-related discovery to address the City's purported concerns. But at every turn, the City has refused to produce any information. Its objections, clothed in language suggesting the requests are overbroad or burdensome, really boil down to the continued assertion that Plaintiffs are simply not entitled to litigate their *Monell* claim. Because Plaintiffs' *Monell*-related discovery requests are relevant and proportional to the needs of this litigation, the Court should order Defendants to respond so that this litigation can proceed.

## LEGAL STANDARD

### I. Discovery Standard

Rule 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …." FED. R. CIV. P. 26(b)(1). "The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which aid a party in the preparation or presentation of his case." FED. R. CIV. P. 26(b) advisory committee's note to 1946 amendment. The rule "make[s] clear the broad scope of examination and that it may cover not only evidence for use at the trial but also inquiry into matters in themselves inadmissible as evidence but which will lead to the discovery of such evidence." *Id.*

To determine whether a discovery request is within the proper scope of discovery, courts assess a variety of factors, including "the parties' relative access to relevant information" and "the importance of the discovery in resolving the issues" at hand. FED. R. CIV. P. 26(b)(1). Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting FED. R. EVID. 401). The movant bears the burden of demonstrating the potential relevance of the discovery requested. *White v. Cty. of Suffolk*, 2022 WL 1154839, at *3 (E.D.N.Y. Apr. 19, 2022). If the movant meets that burden, the burden shifts to the party opposing the discovery request "to establish that the request lacks relevance, despite the broad and liberal construction afforded the

federal discovery rules." *Id.* (quoting *T.H. by Shepherd v. City of Syracuse*, Civ. Action No. 5:17-CV-1081 (GTS/DEP), 2018 WL 3738945, at *2 (N.D.N.Y. Aug. 7, 2018)).

Courts in this Circuit have recognized that relevance for purposes of these rules, although "not unlimited," is "an extremely broad concept." *See, e.g.*, *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004). And while *Monell* discovery might seek unique types of information, it does not follow unique rules or more narrow principles – these same rules encouraging broad disclosure similarly apply. *See, e.g.*, *Nunez v. City of New York*, No. 11 Civ. 5845(LTS)(JCF), 2013 WL 2149869, *2 (S.D.N.Y. May 17, 2013) (applying these same broad principles to evaluate *Monell* discovery); *Sunderland v. Suffolk County, New York*, CV 13-4838 (JFB) (AKT), 2016 WL 3264169, *2 (E.D.N.Y. 2016) (analyzing *Monell* discovery under the "very broad" scope of discovery under Rule 26(b)); *Harper v. Port Authority of New York & New Jersey*, No. 05 Civ. 5534 (BSJ)(RLE), 2006 WL 1910604, *2 (S.D.N.Y. July 10, 2006) (evaluating merits of *Monell* discovery under the court's broad discretion to manage discovery, with a mindset that "impediments to discovery in a § 1983 case are not favored").

**II.       Standard for Municipal Liability**

Plaintiffs allege that the City had a *de facto* policy that allowed its officers to fabricate false evidence and pursue wrongful convictions through flawed investigations. *See* ECF No. 33-1 at ¶¶ 163-65. They have pled that this practice persisted because policymakers were aware of it and exhibited deliberate indifference to it, thereby effectively ratifying it. *Id.* And they also allege that misconduct persisted because the New York City Police Department did not sufficiently train, supervise, or discipline its officers, while simultaneously encouraging cases to be closed at all costs, creating an environment where widespread misconduct could flourish. *Id.* at ¶¶ 164-65.

There are multiple ways to establish municipal liability under Plaintiff's *Monell* theories. First, Plaintiffs could show that Defendant Cordoba and/or Desormeau acted pursuant to an official policy or custom sanctioning unconstitutional conduct. *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 694. Alternatively (or in addition), Plaintiffs could prove the officers acted in accordance with "a practice so consistent and widespread [at the City] that, although not expressly authorized, [it] constitutes a custom or usage of which a supervising policy-maker must have been aware." *Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)) (internal quotation marks omitted)

As another avenue, municipal liability can be grounded in a showing that policymakers at the City failed "to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (*quoting Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)). To prove a failure to train or supervise claim, Plaintiffs must demonstrate that (1) a policymaker knew officers would confront a given situation; (2) "that the situation either presents the [officer]with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation" and (3) "that the wrong choice by the [officer] will frequently cause the deprivation of a citizen's constitutional rights." *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d. Cir. 2007) (discussing failure to train *Monell* claims); *see also Reynolds v. Giuliani*, 506 F.3d 183, 191-93 (2d. Cir. 2007). Thus Plaintiffs must establish a

specific deficiency in the training or supervision so related to their ultimate injuries that the deficiency caused the constitutional deprivation. *Green v. City of New York*, 465 F.3d 65, 81 (2d. Cir. 2006).

## ARGUMENT

Each of Plaintiffs' outstanding discovery requests is proportionally aimed at the elements of municipal liability, and the Court should therefore compel the City to produce responsive information.

I. **The City Must Respond to Plaintiffs' Outstanding Requests for Production Seeking Information about Complaints to CCRB and IAB, Including Specific Relevant Third-Party Complaints**

Plaintiffs' *Monell* theories require evidence of a widespread practice of officers fabricating false evidence and that the relevant policymaker had notice of the unconstitutional conduct. *Jones*, 182 F. Supp. 3d at 158; *Am. America*, 361 F.3d at 126; *Jenkins*, 478 F.3d at 94. To that end, Plaintiffs requested documents about complaints of misconduct to the City and specific instances of misconduct identified in their Complaint. Although after the August 7, 2024 status conference the City produced a limited amount of complaint data, the City has otherwise refused to produce any documents responsive to either request. The Court should order the City to do so.

A. **Complaint Data Sought By Plaintiffs' Third Set of Requests for Production, Request No. 2**

Plaintiffs served their Third Set of Requests for Production on March 8, 2024. Ex. 1 (DOC3). Request No. 2 seeks documents related to complaints made to the Citizen Complaint Review Board and Internal Affairs Bureau—independent oversight bodies that investigate citizen complaints of police misconduct in New York—regarding the use of confidential informants, pretextual traffic stops, fabricated or false evidence, and failure to disclose exculpatory or impeachment evidence. Plaintiffs cabined the complaints they seek to those arising between January 1, 2008 and January 1, 2020.

In an April 17, 2024 meet and confer, the City objected to the request as overly broad. Ex. 2 (April 25, 2024 Letter). After some back and forth, Plaintiffs ultimately agreed to narrow the request by focusing on four topic areas and seeking data related only to cases from Queens, as long as the City agreed not to argue later in the case that Plaintiffs' sample size is too narrow. Ex. 3 (July 8, 2024 Letter) at 2. The City rejected Plaintiff's proposal, and at the August 7, 2024 Status Conference, this Court ordered the City to produce, for starters, a spreadsheet it had compiled listing each case the Department Advocates had brought against officers for false statements and the penalty imposed. Ex. 4 (August 7, 2024 Status Conference) at 11. At the same conference, the City maintained its position that it would only produce IAB or CCRB files for those cases that the IAB or CCRB actually investigated and that resulted in officer discipline. *Id.* at 14-15, 56-57. To date it has produced no records about IAB or CCRB files.

On August 7, 2024, the City produced the Department Advocate data, as directed at the status conference. Ex. 5 (Department Advocate Data). This production covers the years 2008 to

2015, and gives very sparse data (a case number, an "activity date," and codes showing a "closing disposition" and categories of charges) for cases the Department of the Public Advocate investigated arising from allegations of false statements, forgery, falsifying a business record, and/or perjury.

The City's production is insufficient, and the Court should order the City to produce the full information Plaintiffs sought.

### 1.     The City Must Produce Complaints, Both Investigated and Ignored, Beyond Those Pursued by the Department Advocate.

The City produced only data for complaints it referred to the Department Advocate because, in its view as expressed at the August 7 status conference and during the parties' conferrals, only those complaints are relevant. Ex. 4 (August 7, 2024 Status Conference) at 56-57. Narrowing the production in this way confines the evidence to information the City cares about (showing that at times it did investigate complaints) and excludes from the case evidence that is important to Plaintiffs, the set of complaints the City ignored, brushed off, or dealt with outside of the Department Advocate's process. Importantly, the City has not denied that it has similar data for non-Department Advocate-investigated complaints.

Courts in this Circuit have understood exactly the problem Plaintiffs face from Defendants' selective production: the information Defendants are withholding is the very evidence Plaintiffs need to prove their *Monell* claims. This is because Plaintiffs can prove municipal liability by showing the City received voluminous complaints of misconduct like that at issue in this case but swept those complaints under the rug rather than meaningfully investigate them. *See, e.g.*, *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) ("An obvious need [to protect against constitutional violations] may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."); *Mahan v. City of New York*, No. 00–CV–6645 (DGT), 2005 WL 1677524, at *7 (E.D.N.Y. July 19, 2005) (granting summary judgment where plaintiff failed to show "anything close to a complete failure to investigate" and where "the evidence show[ed] that the NYPD did investigate every allegation against [the officer]"); *Alwan v. City of New York*, 311 F. Supp. 3d 570, 584 (E.D.N.Y. 2018) (stating that "deliberate indifference" may be "inferred if prior complaints of misconduct are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents, or if the [municipality's] response is so patently inadequate to the task as to amount to deliberate indifference."); *Gibbs v. City of New York*, No. 06 Civ. 5112 (ILG) (VVP), 2008 WL 314358, at *1 (E.D.N.Y. Feb. 4, 2008) (allowing discovery into prior misconduct similar to that alleged in complaint); *Chillemi v. Town of Southampton*, No. 12-3370(ADS)(AKT), 2015 WL 1781496, at *6 (E.D.N.Y. Apr. 20, 2015) (quoting *Frails v. City of New York*, 236 F.R.D. 116, 117-18 (E.D.N.Y. 2006)) ("Accordingly, courts have held that records of disciplinary charges, internal investigations, and complaints concerning prior instances of misconduct which are similar to the misconduct alleged by the plaintiff 'could lead to evidence that would be admissible at trial and thus, are discoverable.'"). Indeed, Courts have held that information discoverable to prove municipal liability specifically includes "unsubstantiated" complaints or complaints that the City may believe are less important because the City disregarded them as part of their complaint process. *See Frails*, 236 F.R.D. at 118 ("Although unsubstantiated allegations may not be admissible at trial, they may lead to

witnesses who have evidence that would tend to prove defendants' intent."); *Shepherd v. City of Syracuse*, Civ. Action No. 5:17-cv-1081 (GTS/DEP), 2018 WL 3738945, at *5 ("prior incidents and complaints regarding [Syracuse PD] officers, even those that are unsubstantiated, are relevant to plaintiff's claims") (citing among others *Zhao v. City of N.Y.*, No., 07-Cv-3636, 2007 WL 4205856, at *2 (S.D.N.Y. Nov. 21, 2007) (holding all complaints against police officers are relevant when a plaintiff is asserting a *Monell* claim)); *White v. Cnty. of Suffolk*, No. 20CV1501JSJMW, 2022 WL 1154839, at *4 (E.D.N.Y. Apr. 19, 2022) (collecting cases).

The City wants to cut off Plaintiffs from the data relevant to their case—data showing complaints put the City on notice of unconstitutional conduct by Cordoba, Desormeau, and other similarly-situated officers—in favor of selectively producing only complaint data that helps the defense. This is improper and the Court should not allow it.

### 2.  The City Must Produce Complaints from a Broader Timeframe.

The City also seeks to impose an improperly narrow timeframe on the complaints Plaintiffs wish to discover. The City produced data that covers 2008 through 2015, while Plaintiffs sought data through 2020.

Plaintiffs agree that some temporal limitation of claims is appropriate. *See, e.g.*, *White*, 2022 WL 1154839, at *3-4 (E.D.N.Y. 2022) (citing *Maurer v. St. Tammany Parish School Board*, Civ. Action No. 19-13479, 2020 WL 12801030, *4 (E.D.La. June 26, 2020)). To that end, Plaintiffs have agreed to confine their discovery to complaint records from five years before the events at issue (their cases span 2013-2015) and five years after. While courts in this Circuit have sometimes confined discovery to a narrower timeframe, determining what is appropriate and proportional is always a case-by-case assessment. *See, e.g., White*, 2022 WL 1154839 at *3-4 (collecting cases and determining 4-6 years was generally appropriate); *Nau v. Papoosha*, Civ. No. 3:21-cv-00018 (SALM), 2023 WL 122622, *11 (D. Conn. Jan. 6, 2023) (citing *Hyatt v. Rock*, No. 9:15-cv-00089 (DNH)(DJS), 2016 WL 6820378, at *4 (N.D.N.Y. Nov. 18, 2016)). Here, Plaintiffs have narrowly focused the content of the complaints—seeking complaints only from Queens and only related to very specific types of misconduct—but pursue those complaints from a slightly broader period. By tailoring their requests in this way, Plaintiffs limit the burden of production on Defendants while still ensuring they can capture all the complaints necessary to demonstrate a widespread practice of unconstitutional conduct.

### 3.  Ultimately Plaintiffs Will Need More Detail About These Complaints.

The data the City did produce from the Department Advocate gives very little detail about the cases themselves, and does not allow Plaintiffs to determine, for instance, the specific misconduct alleged. As the City appears to recognize, and as the Court acknowledged at the August 7 status conference, the data the City produced is really the beginning of what Plaintiffs are seeking.  Ex. 4 (August 7, 2024 Status Conference) at 9, 10-11 (the City acknowledging that its approach is to "negotiate what Monell discovery will be", and the Court recognizing that the Fed. R. Civ. P. does not require the Plaintiffs to agree this is all Plaintiffs are going to request). As in other *Monell* litigation, Plaintiffs' goal is to understand the universe of complaints and from there seek more detailed information about a subset of those cases, either by sampling, by focusing on other identifiable categories, or through another appropriate method. *Rutherford v. City of Mt. Vernon*, 698 F. Supp.3d 574, 615-16 (S.D.N.Y. 2023) (collecting cases where

Plaintiff showed, in part using statistical evidence, evidence of a widespread practice); *see also Sorlucco*, 971 F.2d at 872-73 (relying on statistical evidence to sustain *Monell* widespread practice claim); *Davis v. City of New York*, 959 F. Supp. 2d 324, 351-55 (S.D.N.Y. 2013) (denying summary judgment on widespread practice *Monell* claim where plaintiff relying on statistical evidence). As the Court recognized, it is difficult for Plaintiffs to identify the additional information they will need for their analysis without knowing the complete universe of complaints. But as with Plaintiffs' requests so far, any request Plaintiffs make for more detailed information about the complaints will be proportional and will follow attempts to confer with Defendants about what makes sense.

**B.    Documents about Specific Third-Party Complaints Identified in Plaintiffs' Second Set of Requests for Production, Request No. 2**

Relatedly, the City has not produced documents responsive to Request No. 2 of Plaintiffs' First Set of Requests for Production. Plaintiffs served that request on September 20, 2023. Ex. 6 (DOC2). This request seeks documents related to third-party complaints identified in paragraphs 98-103 of Plaintiffs' amended complaint. On July 8, 2024, Plaintiffs proposed a narrowed version of this request limited to Dejuan Battle and Lyla Smith's complaints (in an effort to focus the relevant timeframe). Ex. 3 (July 8, 2024 Letter) at 2. In the July 16, 2024 meet and confer, the City refused to produce materials related to those cases, asserting they were irrelevant. Plaintiffs have received no documents in response to this request as of the date of this filing.

In 2011, DeJuan Battle was wrongfully convicted of criminal possession of a weapon in the second degree in Queens, and he asserted he was innocent. In 2014, his conviction was vacated and the indictment dismissed when the appellate court found that the officers' credibility was belied by objective facts. *See* ECF No. 33-1 at ¶ 102.

In 2012, Lyla Smith was falsely arrested and harassed when she went to the 13th Precinct in Queens to complain about a raid on her boyfriend's house. She was arrested and falsely charged with drug and ammunition possession. These charges were dismissed and civil litigation she filed settled. *See* ECF No. 33-1 at ¶ 103.

Like Dejaun Battle, Plaintiffs Taron Parkinson, Dennis Smith, and Keith Garlin were falsely accused of criminal possession of a weapon. ECF No. 33-1 at ¶¶ 32-34, 69-70, 78-84, 102. Like Lyla Smith, Plaintiffs Michael Suber, Audrey Brown, and Vaughn Payne were falsely accused of possession of controlled substances. *Id.* at ¶¶ 39-60, 85-94, 103.

"To demonstrate a de facto policy or custom through a widespread practice, a plaintiff must show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Rodriguez v. City of New York*, 607 F. Supp. 3d 285, 292 (E.D.N.Y. 2022) (internal quotation marks omitted). "*Monell* liability, by its nature, will often turn on evidence concerning victims other than the plaintiffs and alleged misfeasors other than the individual defendants." *Outlaw v. City of Hartford*, 884 F.3d 351, 380 (2d Cir. 2018). Proof of the City's notice of unconstitutional conduct within its rank is a core element of Plaintiffs' municipal liability claim. *See Lucente v. Cty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (stating that, to impose *Monell* liability based on a theory of widespread practice, there must be evidence, in part, that shows that the municipality was aware of the abuse); *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (stating that to

prevail against a municipality, a plaintiff can show that policymakers were aware of the unconstitutional conduct and ignored it).

Both Battle's and Smith's cases are relevant to Plaintiffs' widespread practice theory of liability. Information about those cases may shine a light on Plaintiffs' allegations that policymakers had notice of misconduct because of events before Plaintiffs' arrests, knew officers were facing circumstances in which they could fabricate (and were fabricating) cases, and knew their training and disciplinary systems were inadequate to prevent misconduct. Plaintiffs have worked to narrow the scope of the original request to minimize the burden of production on the City. Because the documents are relevant and the burden required to produce the information is proportionate to the needs of the case, the Court should enter an order compelling the City to produce material responsive to Request No. 2 of Plaintiffs' First Set of Requests for Production.

**II.     The City Must Answer Outstanding Interrogatories That Seek Information about Policymakers and Knowledge of Misconduct**

Plaintiffs served on the City targeted interrogatories seeking information about policymakers and their knowledge of misconduct. The City has not provided answers, and the Court should order them to do so.

**A.     Plaintiff Taron Parkinson's First Set of Interrogatories, Request Nos. 10 & 11 Seeking Information about Supervisors and Their Knowledge of Cordoba and Desormeau's Misconduct**

The City has yet to provide a response to Plaintiff Taron Parkinson's First Set of Interrogatories, Request Nos. 10 and 11, served on July 5, 2023. Ex. 7 (Parkinson ROG1). Interrogatory No. 10 sought the identity of each superior within the NYPD, employee of the NYPD, or policymaker of the City who was informed of alleged misconduct by Defendant Desormeau. Interrogatory No. 11 sought the identity of each superior within the NYPD, employee of the NYPD, or policymaker of the City who was informed of alleged misconduct by Defendant Cordoba.

On October 12, 2023, the City served its responses without providing an answer to these Interrogatories, asserting that these requests were too broad and irrelevant to the misconduct alleged in this case Ex. 8 (City's Response to Parkinson ROG1) at 12-14. The parties conferred on these responses on October 26, 2023 and October 30, 2023. Ex. 9 (November 28, 2023 Letter). The City agreed to consider Plaintiffs' requests and to provide a position as to whether it would amend its objections. At the July 16, 2024 meet and confer, the City indicated that it would maintain its prior objections and provide no information responsive to Plaintiffs' requests.

For the first time at the August 7, 2024 status conference, the City asserted that no superiors, employees or policymakers were aware of any misconduct by Defendants Desormeau or Cordoba before Plaintiffs' cases, and offered to provide a sworn response to that effect. Ex. 4 (August 7, 2024 Status Conference), at 98. Plaintiff has not received even that supplementation as of the date of this letter.

The information these interrogatories seek is relevant to Plaintiffs' failure to supervise theory. "[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Supervisor liability can be shown through "(1) actual direct participation in the

constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Id.* at 145 (citation omitted). Failing to identify the supervisors required to supervise a defendant can be fatal to a litigant's claim. *See Carrillos v. Inc. Vill. of Hempstead*, 87 F. Supp. 3d 357, 383 (E.D.N.Y. 2015). By contrast, claims under this theory survive where litigants can identify supervisors. *See Nelson v. City of New York*, No. 18 CIV. 4636 (PAE), 2019 WL 3779420, at *15 (S.D.N.Y. Aug. 9, 2019)(declining to dismiss failure to supervise theory and directing defendants to help ascertain the identity of the supervisors).

Here, Plaintiff seeks the identities of Desormeau and Cordoba's supervisors. Whether Defendant Desormeau's or Cordoba's supervisors knew about their misconduct, and when, is central to Plaintiffs' claims. Even if the City were to maintain that no such misconduct was ever reported to any supervisor, Plaintiff is entitled to a sworn interrogatory response to that effect. This sworn interrogatory should cover time periods after Plaintiffs' cases, if that is when the City claims a supervisor was first informed, so that Plaintiff can use that information to evaluate the sufficiency of Defendants' supervisory and disciplinary schemes and test whether the City's claim of ignorance is credible.

This information is relevant to Plaintiff's failure to train theory or discipline theories as well. Plaintiffs assert that the City failed to implement any training mechanism for oversight or punishment of officers for misconduct. ECF 33-1 at ¶ 163. To test that theory, Plaintiff needs to know the identity of those persons who received any reports that Defendant Cordoba and/or Defendant Desormeau were engaging in misconduct and what training, if any, they received as a result. Even if the City were to maintain that no such misconduct was ever reported to any supervisor, Plaintiff is entitled to a sworn interrogatory response to that effect since the lack of notification may itself be relevant to the City's failure to discipline, supervise, or train these officers.

The Court should enter an order compelling the City to identify the defendant officers' supervisors as requested Interrogatory Nos. 10 and 11 of Plaintiff Taron Parkinson's First Set of Interrogatories.

B.     **Plaintiff Michael Suber's First Set of Interrogatories, Request No. 2, Seeking Information About Policymakers**

The City has yet to provide a response to Request No. 2 of Plaintiff Michael Suber's First Set of Interrogatories, served on May 20, 2024. Ex. 10 (Suber ROG1). This request seeks the identity of policymakers and/or individuals to whom policymaking authority was delegated on particular topics. *Id.* at 2-3. On July 8, 2024, Plaintiff served a Rule 37 letter to the City noting that its response to this interrogatory was outstanding and requesting a response by July 11, 2024. Ex. 3 (July 8, 2024 Letter). At the August 7, 2024 status conference, the City agreed to provide a sworn response. Ex. 4 (August 7, 2024 Status Conference), at 98 (the City referenced this coming from a second set of interrogatories, but the interrogatory at issue is from the first set). The City served its response on August 22, 2024. Ex. 11 (City's Response to Suber ROG1). The City broadly objected to the request and stated that it would "disclose, at an appropriate time, any potential witnesses that may be called by defendants which are required to be disclosed

by Fed. R. Civ. P. 26(a)." *Id.* at 7. The City's response is insufficient, and the City has offered no basis for withholding a response to the discovery request.

"The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which aid a party in the preparation or presentation of his case." FED. R. CIV. P. 26(b) advisory committee's note to 1946 amendment. Official municipal policy may be established by the acts of its policymakers. *Connick*, 563 U.S. at 61. That is because a policymaker's "express" or "tacit" ratification of a lower-level employee's actions furnishes the basis for municipal liability. *Jones*, 691 F.3d at 81. A plaintiff must know the identity of policymakers who could be aware of persistent misconduct to prove that the policymakers knew of and ratified misconduct. *See Arnold v. Town of Camillus*, 662 F. Supp. 3d 245, 261-62 (N.D.N.Y. 2023) (finding that plaintiff plausibly alleged a municipal liability claim where facts indicated that the policymaker had notice of misconduct); *see also Hardy v. Town of Greenwich*, 629 F. Supp. 2d 192, 200 (D. Conn. 2009) (highlighting importance of determining final policymaker for purposes of municipal liability).

The information Plaintiffs seek in this interrogatory is central to proving their allegation that the City was on-notice of the issues caused by its dysfunctional disciplinary system. ECF No. 33-1 at ¶¶ 95-96, 104-12. This is core *Monell* information, and the City has failed to articulate any reason to withhold it. *See, e.g.*, *Clarke v. Antonini*, No. 21 Civ. 1877, 2022 WL 4387357, at *12 (S.D.N.Y. Sept. 22, 2022) (to satisfy *Monell*, a plaintiff needs to identify which policymaker had knowledge of misconduct). The City's delay in providing this information only serves to compound the discovery delays in this case, since Plaintiffs cannot take discovery probing the policymakers' knowledge until they know who the policymakers are.

The Court should enter an order compelling the City to identify these policymakers as requested in Interrogatory No. 2 of Plaintiff Michael Suber's First Set of Interrogatories.

## III.     The City Must Identify a Rule 30(b)(6) Deponent on Municipal Policy Topics

There seems to be no disagreement between the parties that the City's policies, written or actual, are at issue in this litigation. Those policies are relevant beyond *Monell*, since they shed light on how Cordoba and Desormeau investigated Plaintiffs' cases. *Masi v. City of New York*, No. 03 Civ 0246 GBD MHD, 2003 WL 22434132, *1 (S.D.N.Y. Oct. 23, 2003) (documents about police training relevant to both *Monell* and non-*Monell* discovery); *Dixon v. City of Buffalo*, No. 1:19-cv-1678 (WMS)(JJM), 2022 WL 22834228, at *7 (W.D.N.Y. March 8, 2022) (policy discovery may be relevant to the Defendant's state of mind and therefore their individual liability); *Estate of King by and through King v. Annucci*, 693 F. Supp.3d 310, 327 (N.D.N.Y. 2023) (evaluating individual liability by considering whether prison officials followed policies)**.** But they are also particularly relevant to *Monell*. And the City has produced some of the relevant written policies and committed to producing the remainder of the policy information Plaintiffs seek by September 10.

On February 22, 2024, Plaintiffs served notice of a deposition of a representative of the City under Federal Rule of Civil Procedure Rule 30(b)(6). The notice asked the City to designate a witness to provide testimony on certain *Monell* issues. Ex. 12 (Rule 30(b)(6) Notice). On May 15, 2024, Plaintiffs served an amended notice. Ex. 13 (Amended Rule 30(b)(6) Notice). On May 23, 2024, the parties met to confer on the topics outlined in the amended notice. During that meeting, Plaintiff agreed to propose a narrowed version of Topic No. 2, which sought deposition testimony on the procedure for investigating any misconduct allegation against an NYPD officer.

On June 10, 2024, Plaintiffs proposed an even narrower version of Topic No. 2. Ex. 14 (June 10, 2024 Email). In this narrowed version, Plaintiffs sought testimony only on the investigative procedure for allegations concerning: (1) failure to disclose exculpatory and/or impeachment evidence to the prosecution; (2) fabrication of evidence during an investigation; (3) committing perjury or otherwise providing false testimony; and/or (4) misuse of confidential informants. This version was tailored to address only the type of misconduct alleged in Plaintiffs' cases.

The City has steadfastly refused to produce a representative to testify about its policies. Instead, the City claims written documentation of its policies is the only discoverable information in this case. During the July 16, 2024 meet and confer, the City objected to the 30(b)(6) topic as s vague, overbroad, and speculative. In the August 1, 2024 status report, the City claimed Plaintiffs should have to demonstrate the City's written policies are inadequate before being permitted to take a Rule 30(b)(6) deposition. ECF No. 94 at 5.

Rule 30(b)(6) witnesses are an important mechanism for a plaintiff to understand a municipality's position. It is appropriate—and indeed routine—for a plaintiff to discover information from a municipality by questioning its representative at a deposition. *See, e.g.*, *Jewels v. Casner*, No. 12-cv-1895, 2015 WL 7306454, at *4 (E.D.N.Y. Nov. 19, 2015) (finding "discovery sought is relevant to plaintiff's claims and reasonable in light of the nature of the case," including testimony "about all policies, procedures, and standards of the New York City Administration for Children's Services ('ACS') and any of its various divisions").

While the City concedes the relevance of the four policies identified in Plaintiffs' deposition notice, it disputes whether Rule 30(b)(6) is an allowable discovery tool. But testimony on the practical application of written policies through a Rule 30(b)(6) witness is a routine practice in this jurisdiction. *See Bishop v. Cty. of Suffolk*, 248 F. Supp. 3d 381, 395 (E.D.N.Y. 2917) (directing police department to produce a Rule 30(b)(6) witness to discuss the criteria the department used to hire a police officer where plaintiff alleged department maintained a practice or custom of failing to properly hire and screen officers); *Martinez v. New York Police Dep't*, No. 19-cv-9885, 2021 WL 4206944, *2-3 (S.D.N.Y. Aug. 9, 2021) (finding magistrate did not abuse her discretion in allowing noticed Rule 30(b)(6) deposition to proceed where topics concerned policies and practices for arrests, internal investigations of arrests, and disciplinary actions for arrests in unreasonable search and seizure case); *Jewels*, 2015 WL 7306454 at *4 (allowing Rule 30(b)(6) deposition to proceed where plaintiff alleged that City was liable via *Monell* for abuse suffered in foster care system and deposition sought testimony on warnings City received about problems within the system). And failing to take a deposition on these issues could be fatal to Plaintiffs' *Monell* claim. *See also Smith v. City of New York*, No. 21-cv-02280, 2024 WL 2133321, at *8 (E.D.N.Y. May 13, 2024) (highlighting that plaintiff's failure to depose the City of New York pursuant to Rule 30(b)(6) undermined *Monell* claim).

The City's written policies are not a substitute for oral discovery. For starters, "[a] party should not be prevented from questioning a live corporate witness in a deposition setting just because the topics proposed are similar to those contained in documents provided or interrogatory questions answered." *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010) ("[Rule] 30(b)(6) depositions can be used to test theories, challenge facts and fill in information gaps.") (citing *State of New Jersey v. Sprint Corp*, Case No. 03-2071-JWL, 2010 WL 610671, at *9-10 (D.N.J. Feb. 19, 2010); *Beckner v. Bayer CropScience, L.P.*, 2006 U.S. Dist. LEXIS 44197, *27, 29–30 (D.W.Va. June 28, 2006) (even when documents have been provided in writing, a witness may be needed to testify about "any underlying factual qualifiers

of those documents" (i.e. information which the defendant knows but is not apparent on the face of the documents)). *See also Dealer Computer Servs. v. Curry*, No. 12 Civ. 3457 (JMF) (JLC), 2013 WL 499520, at *3-5 (S.D.N.Y. Feb. 7, 2013) (allowing a Rule 30(b)(6) deposition to discuss checks that the defendant argued "speak for themselves" where the witness would opine about the meaning and use of the written documents). Plaintiffs are entitled to ask a Rule 30(b)(6) question about these written policies to ascertain their meaning, applicability, and most important how the written policies have been implemented in the City.

Even were this not true, the documents the City has provided do not present a complete picture of the policies at issue in this case. Plaintiffs allege the City employed *de facto*, unwritten policies permitting unconstitutional conduct by its officers. ECF 33-1 at ¶¶ 95-96, 104-12. Plaintiffs are entitled to depose the City and ask reasonable questions to ascertain if such unwritten policies existed.

What's more, the City's written policies, even those produced to date, are not on their face exhaustive and self-explanatory. For example, NYPD policy requires a supervisor to oversee an officer's use of confidential informants. Ex. 15 (NYPD Patrol Guide - Procedure No. 212-68) at 1. Similarly, if probable cause for a search warrant is based on information provided by a confidential informant, supervisors must personally witness the informant interview and verify all information gathered. Ex. 16 (NYPD Patrol Guide - Procedure No. 212-75) at 1-2. But the written policies don't say what supervisor involvement in these contexts means. What does it mean for a supervisor to "evaluate" the quality and accuracy of information provided by an informant as delineated in the informant policy? Ex. 15 (NYPD Patrol Guide - Procedure No. 212-68) at 4. What does it mean to "conduct a computer check" of an informant? *Id.* at 2. What does it mean to "debrief" a prospective informant? *Id.* How does a supervisor "review and recommend approval or disapproval" of an informant? *Id.* at 3. Plaintiffs should be allowed to put these and similar questions to the City's representative at a Rule 30(b)(6) deposition to understand what the City's operative policies were and how they impacted the individual Defendants' conduct.

Similarly, the City's written policies contain no information about how deviations from these policies are reported, investigated, and adjudicated, which is the core of Plaintiffs' claims. Oral discovery is the ideal tool for Plaintiffs to investigate these issues.

The Court should enter an order compelling the City to designate a Rule 30(b)(6) witness to testify on the topics outlined in Plaintiffs' amended notice.

## CONCLUSION

Plaintiffs have carefully crafted their requests, narrowed them where appropriate, and extensively conferred with Defendants, but the parties are at an impasse. For the foregoing reasons, Plaintiffs request that this Court enter an order compelling the City to comply with Plaintiffs' *Monell* discovery requests so this case can proceed.

                                                    Respectfully submitted,

                                                    /s/ Tara Thompson
                                                    *One of Plaintiffs' Attorneys*

Jon Loevy
Renee Spence
Tara Thompson
Alison R. Leff
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
tara@loevy.com

## CERTIFICATE OF SERVICE

    I, Tara Thompson, an attorney, hereby certify that on September 5, 2024, I served the foregoing Letter-Motion to all counsel of record via email.

/s/ Tara Thompson
*One of Plaintiffs' Attorneys*
